UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

_____

**CHRISTOPHER DANIEL BROWN**,

                Plaintiff,

v.                                           Case No. 15-cv-237-pp

**ROBERT B. JACHOWICZ,
GLEN HAASE,
BRIAN M. OLSON,
ANDREW AYALA,
JANELLE JURKIEWICZ, and
JANE/JOHN DOE,**

                Defendants.
_____

**DECISION AND ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED *IN FORMA PAUPERIS* (DKT. NO. 2), DENYING PLAINTIFF'S MOTION TO APPOINT COUNSEL (DKT. NO. 8) AND SCREENING PLAINTIFF'S AMENDED COMPLAINT (DKT. NO. 7)**
_____

      The plaintiff, a state prisoner, filed a *pro se* complaint under 42 U.S.C. §1983, alleging that the defendants violated his civil rights during and after his arrest. Dkt. No. 1. He filed the amended complaint that is the subject of this order on June 4, 2015. Dkt. No. 7. This order resolves the plaintiff's motion for leave to proceed *in forma pauperis* (Dkt. No. 2) and his motion to appoint counsel (Dkt. No 8), and screens the plaintiff's amended complaint.

**I.**     **Plaintiff's Motion for Leave to Proceed *In Forma Pauperis* (Dkt. No. 2)**

      The Prison Litigation Reform Act applies to this action because the plaintiff was incarcerated when he filed his complaint. 28 U.S.C. §1915. That law allows a court to give an incarcerated plaintiff the ability to proceed with

1

his lawsuit without pre-paying the civil case-filing fee, as long as he meets certain conditions. One of those conditions is a requirement that the plaintiff pay an initial partial filing fee. 28 U.S.C. §1915(b). Once the plaintiff pays the initial partial filing fee, the court may allow the plaintiff to pay the balance of the $350 filing fee over time, through deductions from his prisoner account. Id.

On March 4, 2015, the court issued an order requiring the plaintiff to pay an initial partial filing fee of $20.59. Dkt. No. 4. The plaintiff paid that amount on March 23, 2015. The court will grant the plaintiff's motion for leave to proceed *in forma pauperis*, and will allow the plaintiff to pay the balance of the $350 filing fee over time from his prisoner account, as described at the end of this order.

## II.  Screening of the Plaintiff's Amended Complaint (Dkt. No. 7)

The law requires the court to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint or portion thereof if the plaintiff raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

A claim is legally frivolous "'when it lacks an arguable basis either in law or in fact.'" Denton v. Hernandez, 504 U.S. 25, 31 (1992) (quoting Neitzke v. Williams, 490 U.S. 319, 325 (1989)). The court may, therefore, dismiss a claim as frivolous where it is "based on an indisputably meritless legal theory" or

2

where the factual contentions are clearly "baseless." Neitzke, 490 U.S. at 327. "Malicious," although "sometimes treated as a synonym for 'frivolous,' . . . is more usefully construed as intended to harass." Lindell v. McCallum, 352 F.3d 1107, 1109-10 (7th Cir. 2003) (internal citations omitted).

To state a cognizable claim under the federal notice pleading system, the plaintiff must provide a "short and plain statement of the claim showing that [he] is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). A plaintiff does not need to plead specific facts, and his statement need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). However, a complaint that offers "labels and conclusions" or "formulaic recitation of the elements of a cause of action will not do." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555). To state a claim, a complaint must contain sufficient factual matter, accepted as true, "that is plausible on its face." Id. (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). The complaint allegations "must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (citation omitted).

In considering whether a complaint states a claim, courts follow the principles set forth in Twombly. First, they must "identify[] pleadings that, because they are no more than conclusions, are not entitled to the assumption

3

of truth." Iqbal, 556 U.S. at 679. A plaintiff must support legal conclusions with factual allegations. Id. Second, if there are well-pleaded factual allegations, courts must "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id.

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that the defendants: 1) deprived him of a right secured by the Constitution or laws of the United States; and 2) acted under color of state law. Buchanan-Moore v. Cnty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009) (citing Kramer v. Vill. of N. Fond du Lac, 384 F.3d 856, 861 (7th Cir. 2004)); see also Gomez v. Toledo, 446 U.S. 635, 640 (1980). The court is obliged to give the plaintiff's *pro se* allegations, "however inartfully pleaded," a liberal construction. Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

A.  ***Allegations in the Complaint***

In his sworn complaint, the plaintiff describes the actions of members of the City of Cudahy Police Department during his arrest on May 26, 2014, Dkt. No. 7 at 2, and his subsequent treatment at St. Luke's South Shore Hospital, id. at 3.

The plaintiff was standing in a field in Cudahy when four police officers (Jachowicz, Haase, Olson, and Ayala) and a K-9 named Ezzo approached him. Id. at 2. Officer Jachowicz ordered the plaintiff to stop, informed the plaintiff he was under arrest, and ordered the plaintiff to place his hands behind his back. At the same time, another officer ordered the plaintiff to place his backpack on

4

the ground. "Ezzo bark[ed] loudly," id., and Officer Olson told the plaintiff to get on the ground. Officer Jachowicz pulled out his gun and pointed it at the plaintiff's face, and the plaintiff immediately put his hands up in the air. Id.

Officers then pushed the plaintiff to the ground, and he was face down in rocks and other sharp objects. The officers placed their full body weight on the plaintiff's upper body and head, which made it difficult for the plaintiff to breathe; he eventually was able to turn his head to the side to get some air. Officers then handcuffed the plaintiff behind his back, dragged him to the police van, and threw him face first into the van. Id. The plaintiff was not placed in any safety restraints, and he was thrown violently from side to side when the van moved. The plaintiff eventually moved his hands from behind his back to the front of his body so that he could brace himself. Id. at 3.

The officers transported the plaintiff to St. Luke's South Shore Hospital. After he was admitted, the plaintiff was handcuffed to the emergency room bed and his legs were secured by restraints. The plaintiff refused medical treatment and tests and informed medical professionals that he would not be giving a blood sample without a warrant. The doctor responded that the blood sample was for medical use only, and could not be used in court. Id.

When an emergency medical technician (EMT) came in and approached the plaintiff with a needle, he told her twice more that he would not give a blood sample. When she continued to approach, Officer Jachowicz and Sergeant Haase said the plaintiff spit on the EMT's shirt. Id. The EMT left the room, and Officer Jachowicz placed a pillow over the plaintiff's face so that

5

Sergeant Haase, Officer Olson, Officer Ayala, and Officer John Doe could place a spit mask over the plaintiff's face. The EMT then returned, and the officers held the plaintiff down while the EMT took a blood sample against the plaintiff's consent. Haase and the attending doctor decided to sedate the plaintiff, because he had caused a verbal disturbance. Id.

That same day, Jachowicz and Haase wrote police reports, discussing the medical procedure. They also filed a police report, but the plaintiff alleges that report omitted critical facts about what had happened at the hospital. Jachowicz also filed a probable cause statement which omitted critical facts. Id.

The plaintiff alleges that two days later, Janelle Jurkiewicz filed a criminal complaint with the district attorney's office, which relied on the allegedly incomplete and incorrect factual recitation in the police reports. Id. at 3-4. In September 2014, Jachowicz testified in court about the incident. Id. at 4.

The plaintiff believes that Officer Jachowicz and Sergeant Haase misstated or omitted facts from their police reports and the probable cause statement, and that Officer Jachowicz perjured himself when he testified in the plaintiff's criminal case. Id. at 4-6.

    B.    ***Analysis***

The plaintiff alleges that the arresting officers violated the plaintiff's Fourth, Fifth, Eighth and Fourteenth Amendment rights through using excessive force, harassing him, and violating his right to confidentiality of his medical information. Id. at 4-6. He also alleges that Jachowicz and Jurkiewicz

6

lied under oath, and that the City of Cudahy police department failed to properly train the officers and withheld evidence (a video taken while the plaintiff was incarcerated in a city facility). Id. at 5-6.

The facts imply that the police officers arrested the plaintiff without a warrant. If that is so, the Fourth Amendment applies to the plaintiff's claims, because the rights of pretrial detainees who have not yet had a judicial determination of probable cause arise under the Fourth Amendment and its objectively unreasonable standard, instead of the due process clause of the Fourteenth Amendment. Williams v. Rodriguez, 509 F.3d 392, 403 (7th Cir. 2007); Lopez v. City of Chicago, 464 F.3d 711, 719 (7th Cir. 2006) ("[T]he protections of the Fourth Amendment apply at arrest and through the *Gerstein* probable cause hearing, due process principles govern a pretrial detainee's conditions of confinement after the judicial determination of probable cause, and the Eighth Amendment applies following conviction.").

"The Fourth Amendment protects against unreasonable seizures; an arrest is a seizure . . . ." Lopez, 464 F.3d at 718. To determine whether officers subjected a party to "unconstitutional conditions and treatment during . . . warrantless detention," the court must determine whether there is "p[roof that the defendant[']s[] conduct was objectively unreasonable under the circumstances." Id. (citing Abdullahi v. City of Madison, 423 F.3d 763, 768 (7th Cir. 2005)). The allegations in the plaintiff's complaint are sufficient to allow him to proceed on Fourth Amendment claims that defendants Jachowicz, Haase, Olson, Ayala, and John Doe engaged in objectively unreasonable

7

conduct during his arrest, as well as during his transportation to and time at the hospital. This includes claims regarding what the plaintiff asserts was a non-consensual warrantless blood draw that took place without his consent.

The plaintiff's next set of claims relates to the police reports, probable cause statement, and criminal complaint. The plaintiff alleges that Officer Jachowicz and Sergeant Haase made false statements in police reports, and that Officer Jachowicz made false statements in the probable cause statement and perjured himself when he testified in the plaintiff's criminal case. The plaintiff also asserts that Officer Jurkiewicz made a false swearing in the criminal complaint against the plaintiff because she relied on the false police reports by the other officers.

It appears that through these claims, the plaintiff is challenging the validity of his criminal conviction.

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a §1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983.

Heck v. Humphrey, 512 U.S. 477, 486-87 (1994). As the Seventh Circuit put it in Dominguez v. Hendley, 545 F.3d 585, 588 (7th Cir. 2008),

> [a] § 1983 claim for a due process violation based on the denial of a fair criminal trial may be brought only after the conviction is set aside. Otherwise, that civil claim would imply the invalidity of the outstanding conviction and would thus

8

constitute a collateral attack on the conviction through an impermissible route.

The plaintiff has appealed his criminal conviction. State v. Brown, Case No. 2015XX551-CR, available at http://wscca.wicourts.gov. That appeal, however, is still pending; the court of appeals has not yet issued a ruling (in fact, the parties have not yet filed briefs). Because the plaintiff's conviction has not been overturned or set aside, the court will not allow the plaintiff to proceed on these claims, and the court will dismiss Officer Jurkiewicz as a defendant.

In his list of legal theories, the plaintiff suggests that the City of Cudahy Police Department and some of its officers knowingly withheld videotape evidence of the plaintiff's incarceration at their facility and did not disclose this evidence prior to trial, in violation of the Fourteenth Amendment. The court will not allow the plaintiff to proceed on this claim, because he does not allege any facts to support it. He does not describe any time he spent in the custody of the City of Cudahy Police Department, or explain what might have been on any videotape taken during that time.

In fact, the court will not allow the plaintiff to proceed on any claims against the City of Cudahy Police Department. He did not name the City of Cudahy Police Department in either the caption of the complaint or the Section II.E. of the complaint, where he listed the names of the defendants. "[T]o make someone a party the plaintiff must specify him in the caption and arrange for service of process." Myles v. United States, 416 F.3d 551, 551 (7th Cir. 2005). The court cannot "deem" someone a defendant to a lawsuit. Id.

9

Nor will the court allow the plaintiff to proceed on his claims regarding violations of his patient confidentiality. "[The Health Insurance Portability and Accountability Act] does not furnish a private right of action." Carpenter v. Phillips, 419 F. App'x 658, 659 (7th Cir. 2011) (collecting cases). Some circuits have recognized a privacy right for prisoners in their medical information, but those cases have involved the purposeful dissemination of intensely private medical information, such as HIV-positive status. See Franklin v. McCaughtry, 110 F. App'x 715, 718-19 (7th Cir. 2004) (refusing to recognize such a privacy right, but noting decisions to the contrary in regard to HIV status in Doe v. Delie, 257 F.3d 309, 311 (3d Cir. 2001) and Powell v. Schriver, 175 F.3d 107, 109 (2d Cir. 1999)). In Franklin, the Seventh Circuit noted that prisoners "at best have very limited privacy rights" and "cannot enjoy greater privacy protection than individuals in free society." Id. at 719. The Court also noted that "some amount of sharing of medical information in areas where it might be overheard by other patients—e.g., in hospital emergency rooms, school infirmaries, and the waiting room of a doctor's office—is commonplace." Id. Like the plaintiff in Franklin, the plaintiff in this case complains only of the presence of officers during his medical treatment. He has no privacy right in that regard.

Finally, the plaintiff suggests that Officer Jachowicz's treatment of the plaintiff was in retaliation for his behavior after a previous arrest, and because he did not express remorse for that behavior. Dkt. No. 7 at 6. To state a retaliation claim, a plaintiff must allege that "(1) he engaged in activity

10

protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the [d]efendants' decision to take the retaliatory action." Bridges v. Gilbert, 557 F.3d 541, 546 (7th Cir. 2009) (internal quotations omitted). The plaintiff alleges that he was "rude" to Officer Jachowicz, Dkt. No. 7 at 6; this allegation is not specific enough to allege exercise of a First Amendment right. He alleges that he "relieve[d] [himself] on the police department floor." Id. Again, without further facts, this is not sufficient to state exercise of a First Amendment right. Finally, he alleges that he "did not express remorse when [he] went to civil court and contested the tickets [he] received from that arrest." Id. Failure to express remorse does not constitute the exercise of a First Amendment right. For these reasons, the court will not allow the plaintiff to proceed on a retaliation claim.

The court also notes that the plaintiff listed in the caption of the amended complaint, and in Section II€, a defendant "Jane Doe." There is no further mention of "Jane Doe" anywhere in the complaint, and there are no allegations that a "Jane Doe" did anything to the plaintiff. He references one "*John* Doe" defendant, an officer who was in his hospital room and helped put the spit mask on the plaintiff's face. The court has allowed the plaintiff to proceed on Fourth Amendment claims against the John Doe defendant, but will dismiss the Jane Doe defendant. Once the defendants have answered the complaint, the plaintiff should use discovery to identify the officer identified as "John Doe" who was present in the plaintiff's hospital room. After the plaintiff

11

has identified the officer, he should move to substitute the officer's true name for "John Doe."

### III. Plaintiff's Motion to Appoint Counsel (Dkt. No. 8)

The plaintiff has filed a motion asking the court to appoint an attorney to represent him. Dkt. No. 8. The motion states that the allegations in his complaint are complex, that he has only basic knowledge of federal law, and that he does not have the ability to take depositions. He states that he sent letters to twelve lawyers, asking them to represent him. He states that he received only two responses, and those two indicated that they could not represent him. The rest did not respond. Id.

In a civil case, the court has discretion to decide whether to recruit a lawyer for someone who cannot afford one. Navejar v. Iyola, 718 F.3d 692, 696 (7th Cir. 2013); Ray v. Wexford Health Sources, Inc., 706 F.3d 864, 866-67 (7th Cir. 2013). First, the person has to make a reasonable effort to hire private counsel on their own. Pruitt v. Mote, 503 F.3d 647, 653 (7th Cir. 2007). After a plaintiff makes that reasonable attempt to hire counsel, the court then must decide "whether the difficulty of the case – factually and legally – exceeds the particular plaintiff's capacity as a layperson to coherently present it." Navejar, 718 F.3d at 696 (citing Pruitt, 503 F.3d at 655). To decide that, the court looks, not only at a plaintiff's ability to try his case, but also at his ability to perform other "tasks that normally attend litigation," such as "evidence gathering" and "preparing and responding to motions." Id.

The plaintiff states that he wrote to twelve lawyers asking them to take his case, and that two responded that they would not represent him. But the plaintiff does not provide information to support these statements (such as the names of the attorneys, the dates he sent the letters, or who wrote back refusing to represent him). The plaintiff will need to provide the names of at least three attorneys he has tried to contact before the court can conclude that he has made a "reasonable attempt" to hire counsel on his own.

The court also notes that, at this stage, even if the plaintiff had provided proof that he'd contacted at least three attorneys, the court would not appoint counsel. The court does not agree with the plaintiff that his claims are complex, and he has done a good job thus far of explaining the facts and his legal theories for why those facts demonstrate constitutional violations. The plaintiff's amended complaint is articulate, detailed and organized, and it is sufficient—at this point in the case—to allow the court and the defendants to understand his claims. The court will deny the plaintiff's request for appointment of counsel without prejudice; he may renew it at a later date if he provides proof that he has contacted attorneys and demonstrates that the case has become too complex for him to handle himself.

## IV. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed *in forma pauperis* (Dkt. No. 2).

The court **DISMISSSES** Janelle Jurkiewicz and Jane Doe as defendants.

13

The court **ALLOWS** the plaintiff to proceed on Fourth Amendment claims only against defendants Jachowicz, Haase, Olson, Ayala, and John Doe.

The court **DENIES** the plaintiff's motion to appoint counsel (Dkt. No. 8).

The court **ORDERS** the United States Marshal to serve a copy of the complaint and this order upon the following defendants pursuant to Federal Rule of Civil Procedure 4: Robert B. Jachowicz, Glen Haase, Brian M. Olson, and Andrew Ayala. Congress requires the U.S. Marshals Service to charge for making or attempting such service. 28 U.S.C. §1921(a). The current fee for waiver-of-service packages is $8.00 per item mailed. The full fee schedule is provided at 28 C.F.R. §§0.114(a)(2), (a)(3). Although Congress requires the court to order service by the U.S. Marshals Service precisely because *in forma pauperis* plaintiffs are indigent, it has not made any provision for these fees to be waived either by the court or by the U.S. Marshals Service.

The court **ORDERS** that the defendants who are served shall file a responsive pleading to the complaint.

The court **ORDERS** that the Secretary of the Wisconsin Department of Corrections or his designee shall collect from the plaintiff's prisoner trust account the $329.41 balance of the filing fee by collecting monthly payments in an amount equal to 20% of the preceding month's income credited to the prisoner's trust account and forwarding payments to the clerk of court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The Secretary shall clearly identify those payments by the case name and number.

The court will send a copy of this order to the warden of the institution where the inmate is confined.

The court **ORDERS** that the plaintiff shall submit all correspondence and legal material to:

>United States District Court
>Office of the Clerk
>Eastern District of Wisconsin
>362 United States Courthouse
>517 E. Wisconsin Avenue
>Milwaukee, Wisconsin 53202

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS. It will only delay the processing of the case.

Because each filing will be electronically scanned and entered on the docket upon receipt by the clerk, the plaintiff need not mail copies to the defendants. All defendants will be served electronically through the court's electronic case filing system. The plaintiff also should retain a personal copy of each document filed with the court.

The court advises the plaintiff that if he fails to timely file documents, it may result in the dismissal of this case for failure to prosecute.

In addition, the parties must notify the clerk of court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Dated at Milwaukee this 2nd day of October, 2015.

BY THE COURT:

_____
HON. PAMELA PEPPER
United States District Judge